IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MIKE SHALES, JOHN BRYAN Sr., AL OROSZ, DAN BREJC, TOBY KOTH and GORDON ANDERSON as Trustees of THE FOX VALLEY LABORERS' HEALTH AND WELFARE FUND, <br><br> and <br><br> MIKE SHALES, JOHN BRYAN Sr., AL OROSZ, TOBY KOTH, GORDON ANDERSON and DAN BREJC as Trustees of THE FOX VALLEY LABORERS' PENSION FUND, <br><br> Plaintiffs, <br><br> vs. <br><br> LANAS CONSTRUCTION, INC., <br><br> Defendant. | Case No. 07 C 2970 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The trustees of the Fox Valley Laborers' Health and Welfare Fund and the Fox Valley Laborer's Pension Fund (collectively, the Funds) have sued Lanas Construction, Inc., asserting violations of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1145, and the Labor-Management Relations Act (LMRA), 29 U.S.C. § 185, for alleged failure to remit reports, union dues, and contributions to the Funds. The Funds have moved for summary judgment on each of their claims. For the reasons stated below, the Court grants the motion in part and denies it in part.

1

**Background**

On a motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in its favor. *Perez v. Illinois*, 488 F.3d 773, 776 (7th Cir. 2007).

Lanas Construction, Inc. (Lanas 1), a construction business, was incorporated in June 1995. Jeff Lanas was vice-president of the company, and Cynthia Lanas, his wife, was the president and sole shareholder. In April 1995, before Lanas 1 was incorporated, Mrs. Lanas executed a short form collective bargaining agreement (CBA) with the Construction and General Laborers' District Council of Chicago and Vicinity. Pursuant to the CBA, Mrs. Lanas agreed to be bound by agreements between the council and employer associations. The CBA required Lanas 1 to submit monthly report and contributions to the Funds on behalf of those employees of Lanas 1 covered by the CBA. The CBA included an evergreen clause providing that the CBA would remain in effect unless either party provided notice otherwise.

Defendant contends that Mr. Lanas did not run the business operations of Lanas 1 and had no ownership stake in the company. Mr. Lanas was, however, employed by Lanas 1. The business was operated out of the Lanas residence, but it utilized a separate phone. In 1997, Lanas 1 was dissolved involuntarily. Defendant contends that Mr. and Mrs. Lanas disagreed over management issues. The Funds contend that prior to its dissolution, Lanas 1 owed $59,177.08 to the Funds for unpaid contributions.

In 1998, J. Lanas Const. (J. Lanas) was incorporated. J. Lanas was also a construction business. Mr. Lanas was the sole shareholder and president of J. Lanas. The Funds contend that between March 2000 and January 2001, J. Lanas incurred a

debt to the Funds for unpaid contributions. This debt resulted in a judgment order entered against J. Lanas and Mr. Lanas, the unpaid balance of which is $24,439.13. J. Lanas was dissolved involuntarily on May 1, 2001.

On March 23, 2000, Mr. Lanas and "Lanas Construction, Inc." executed a promissory note in favor of the Funds in the amount of $96,100.48. The Funds contend that the note covered debts owed to the Funds.

From 2001 to 2004, Mr. Lanas operated a construction business as a sole proprietorship. In 2004, he incorporated Lanas Construction, Inc. (Lanas 2), another construction business. Beginning in 2004, Lanas 2 employed at least three employees that were members of the Fox Valley Laborers' Union. Lanas 2 paid the employees' wages at rate prescribed by the CBA and deducted union dues from their paychecks but it failed to remit those dues to the Funds.

From April 2006 through May 2008, Lanas 2 submitted benefits reports to the Funds listing the hours worked by each union employee. Each of the monthly reports contains a certification statement stating that

> [t]he undersigned employer, if not already a signator, hereby becomes a signatory party to the currently applicable [CBA] with the District Council . . . and also to each agreement and Declaration of Trust, and amendments, establishing the funds for which payment is made herewith.

Pl. Ex. 8. Lanas 2 signed five of the reports containing this statement. Lanas 2 paid some money to the Funds in October 2007.

In 2006, the Funds adopted a "Defaulted Employer" policy through an amendment to the CBA. The amendment provides that an employer that is managed or owned by someone or the spouse of someone who managed or owned a Defaulted

3

Employer is liable to the Funds for the Defaulted Employer's unpaid contributions. A Defaulted Employer is defined as "an employer who previously had in the last [ten] years incurred substantial liability to the Funds of not less than $30,000.00 for delinquent contributions and then ceased operations or became insolvent." Mot. at 13. The CBA amendment also requires that the Funds send written notice to the successor employer concerning the Funds' determination. It states that the notice "will provide the Employer with a date certain, no less than 30 days after the date of transmittal of the Notice to the Employer to provide evidence, satisfactory to the [Funds], that the Employer should not be subject to the [Defaulted Employer policy]." Pl. Ex. 7 at 3.

On April 17, 2007, a collection agent sent notice of the debt and a copy of the amendment to Lanas 2. The notice stated that Lanas 2 owed $84,498.83 in unpaid contributions and liquidated damages and that it was required to pay the full amount to the collection agent by April 30, 2007. The notice also stated that the Funds would institute legal proceedings against Lanas 2 if it failed to make the payment.

## Discussion

Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Bilthouse v. United States*, 553 F.3d 513, 514-15 (7th Cir. 2009) (citing Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-32 (1986)).

**A.    Lanas 2's liability for contributions after 2004 under the CBA**

The Funds contend that Lanas 2 is liable for delinquent contributions and dues along with liquidated damages, interest, and attorneys fees as provided in the CBA.

4

Lanas 2 admits that it owes some contributions and dues, but denies that it is liable for any liquidated damages, interest, or attorneys fees because it is not now, nor has it ever been, a party to the CBA.

"'[An obligation under a CBA] is not dependent upon the reduction to writing of the parties' intention to be bound,' rather '[a]ll that is required is conduct manifesting an intention to abide and be bound by the terms of an agreement.'" *Bricklayers Local 21 of Ill. Apprenticeship and Training Program v. Banner Restoration, Inc.*, 385 F.3d 761, 766 (7th Cir. 2004) (quoting *Gariup v. Birchler Ceiling & Interior Co.*, 777 F.2d 370, 373 (7th Cir. 1985)). Among the factors courts consider in ascertaining an employer's intent to abide by a CBA are "the payment of union wages, the remission of union dues, the payment of fringe benefit contributions, the existence of other agreements evidencing assent and the submission of the employer to union jurisdiction." *Id.* (collecting cases).

The Funds contend that Lanas 2's actions between 2006 and 2008 constitute a manifestation of assent to the CBA. The Funds points out that Lanas 2 hired some union employees, paid them union wages in accordance to rates set under the CBA, withheld union dues from their paychecks, submitted monthly contribution reports to the Funds for two years, and paid at least some of those contributions in October 2007. These actions, the Funds contend, show Lanas 2's intent to be bound by the CBA. In addition, each of the monthly reports contains the certification statement, quoted earlier, which provides that by signing the statement, the employer becomes a party tot he CBA and related agreements requiring contributions to the Funds. Of the twenty-four reports

5

offered by the Funds, four[1] are not disputed to have been signed by an agent of Lanas 2 (presumably, Mr. Lanas). The Funds contend that these signatures manifest Lanas 2's intent to be bound by the CBA.

Lanas 2 contends that although it acknowledges an obligation to remit union dues it deducted from employee paychecks as well as other contributions on behalf of those employees, it was never a party to the CBA and is, therefore, not liable for liquidated damages, interest, or attorney's fees. Lanas 2 contends that the "boilerplate" certification was not prominent on the monthly reports and that a signed certification is not dispositive of the issue, but only "some evidence" of an employer's intent to be bound. *See Banner Restoration*, 385 F.3d at 768 n.3.

The Seventh Circuit has stated that signed certification statements in this context are indicative of an employer's intention to be bound by a CBA. In *Banner*, the court stated that "the certification language on the monthly reports and the accompanying payments [were] entitled to some weight in an analysis of whether [the employer's] conduct manifested an intent to abide by the [CBA]," where the certification statements were unsigned, but remitted with signed checks. *Id.* In that case, the court affirmed the district court's finding that the unsigned reports combined with other employer actions in conformity with the CBA at issue—paying union wages, remitting union dues, remitting contributions, and submitting to union jurisdiction during a grievance procedure—manifested the employer's intent to be bound by the CBA. Although

---

[1] A fifth report appears to have a signature, but the markings on the signature line are too faint to be certain. In any event, Lanas 2 does not contest that any of these five reports were signed by Mr. Lanas.

*Banner* upheld the result of a bench trial, other courts have granted summary judgment in this context. *See Brown v. C. Volante Corp.*, 194 F.3d 351, 354-56 (2nd Cir. 1999); *Laborers' Pension Fund v. E. Guerra Co.*, No. 99 C 4085, 2000 WL 1349148, at *4 (N.D. Ill. Sept. 14, 2000) (granting summary judgment in case in which employer sent four contributions to the funds and submitted signed contribution reports stating that the employer agreed to be bound by the CBA). In *Brown*, the Second Circuit upheld summary judgment granted in favor of a pension fund in a similar case. *Brown*, 194 F.3d at 354-56. In that case, the court found that the employer's actions—signing remittance reports which expressly incorporated the CBA, cooperating with an audit, paying union wages, and acknowledging responsibility to the funds—were "sufficient, absent contrary evidence, to establish as a matter of law [employer's] intent to adopt" unsigned CBAs). *Id.* at 354-55. This view accords with that of the Seventh Circuit. *See Banner Restoration*, 385 F.3d at 766 (citing *Brown* for the proposition that certain kinds of employer conduct has been held to be sufficient to demonstrate assent to an unsigned CBA).

    The evidence in this case reflects that Lanas 2 has behaved in a manner consistent with adoption of the CBA even though it has failed to perform all of the obligations contained in the CBA. Lanas 2's deduction of union dues and the submission of contribution reports reflects that it understood that it was obligated to remit dues and contributions. The fact that Lanas 2 signed several certification statements lends further support to the proposition that it manifested acceptance of the CBA.

Lanas 2 contends that the certification statement was not meant to bind Lanas 2 to the CBA but instead was a protective measure for the Funds, because the LMRA generally forbids union pension plans from accepting contributions from employers unless there is a "written agreement" specifying the "detailed basis on which such payments are to be made." *Id.* at 771 n.9 (quoting 29 U.S.C. § 186(c)(5)(B)). Though this is an accurate reading of the statute, it does not preclude the certification statements from being considered as evidence indicative of the employer's intention to be bound to the CBA. *See id.* at 768, 771 (certification statements may be evidence of intent to be bound as well as sufficient to satisfy the "written agreement" requirement of section 186(b)(5)(B)).

Lanas 2 also contends that some writing between itself and the Funds, other than the certification statement, between itself and the Funds is necessary to impose liability under the CBA because the certification statement itself does not set forth the "detailed basis on which payments are to be made." This argument misses the point. The existing CBA, which is referenced in the certification statements, is the other writing that sets forth the necessary detail. An employer need not be a party to an original agreement to be bound, so long as the certification statement incorporates another writing that specifies the "detailed basis." *Id.* at 771 n. 9 ("certification language . . . may be sufficient, to the extent it *incorporates* other written agreements with the employer—such as [CBAs] or trust agreements—which do set forth the 'detailed basis' for payments as required by [the statute]."). The certification language found in the contribution reports "is meant for the situation in which an employer who has not yet signed [an existing CBA] nevertheless acts in conformity with it, indicating an intention

8

to be bound." *Dugan v. R.J. Corman R. Co.*, 344 F.3d 662, 668 (7th Cir. 2003). That is precisely the situation in this case. Even when viewed in the light most favorable to Lanas 2, the evidence demonstrates that it acted in conformity with the CBA in several important respects and acknowledged at least five separate times that it was bound under the CBA. No reasonable fact finder could conclude that Lanas 2 had not manifested assent to the CBA. Under ERISA, that is a sufficient basis for liability.

**B.     Single employer, alter-ego, and successor liability**

The Funds assert that Lanas 2 is also liable for the delinquent contributions of Lanas 1 and J. Lanas because the entities comprise a single employer; Lanas 2 is the alter-ego of the other two entities; or Lanas 2 is the successor-in-interest to the other two entities.

**1.     Single employer liability**

Courts generally consider four factors in determining whether two separate entities should be considered a "single employer": interrelation of operations, common management, common ownership, and centralized control of labor relations and personnel. *Papa v. Katy Indus., Inc.*, 166 F.3d 937, 939 (7th Cir. 1999). No single factor is determinative. *Trustees of Pension Welfare and Vacation Fringe Ben. Funds of IBEW, L.701 v. Favia*, 995 F.2d 785, 789 (7th Cir. 1993).

The Funds contend that because Mr. Lanas "was involved" in the operations of all three companies, a reasonable inference should be drawn that he managed each company's labor relations. The Funds also contend that the three companies employed union members and operated from Mr. Lanas's home. Lanas 2 contends that there

9

were significant difference in ownership and management because Mrs. Lanas owned and managed Lanas 1. Lanas 2 also contends that there was no interrelation of operations because the companies were in business at different times.

All three companies share some common management because Mr. Lanas acted as either president or vice-president of each company. There remain, however, significant factual disputes over the extent of Mr. Lanas's control of Lanas 1. As noted above, Mr. Lanas had no ownership interest in Lanas 1, and Mrs. Lanas, the owner of Lanas 1, had no ownership interest in either J. Lanas or Lanas 2. There is evidence that the operations of the three entities were interrelated—specifically the fact that the companies operated out of the same location and focused on concrete construction—but the time lapses between the existence of the entities cuts the other way: Lanas 1 was dissolved in 1997, but J. Lanas was not incorporated until 1998. The gap between the dissolution of J. Lanas and the formation of Lanas 2 is four years. Finally, the Funds ask the Court to infer from the fact that Mr. Lanas was involved in the management that he controlled labor operations for each of the companies. On summary judgment, however, an inference cannot be drawn against the non-moving party, *see Perez*, 488 F.3d at 776, unless of course that is the only inference a reasonable fact finder could draw. That is not the case here. Moreover, the evidence indicates that Mrs. Lanas, not Mr. Lanas, signed the short-form CBA. Viewed in the light most favorable to Lanas 2, one could infer that Mrs. Lanas controlled labor relations at Lanas 1. Under the circumstances, summary judgment in the Funds' favor on the single employer theory would be inappropriate.

### 2. Alter ego liability

The alter ego doctrine applies when an entity serves as a "disguised continuance of a former business entity or an attempt to avoid the obligations of a [CBA], such as through a sham transfer of assets." *Favia*, 995 F.2d at 789 (internal quotation marks and citations omitted). The factors this Court must consider in this analysis include "(1) the amount of respect given to the separate identity of the corporation by its shareholders; (2) the fraudulent intent of the incorporators; and (3) the degree of injustice visited upon the litigants by respecting the corporate entity." *Cent. States, Southeast and Southwest Areas Pension Fund. v. Cent. Transp., Inc.*, 85 F.3d 1282, 1287 (7th Cir. 1996) (citing *Lumpkin v. Envirodyne Indus., Inc.*, 933 F.2d 449, 461 (7th Cir. 1991)). In general, the analysis is the same as that under the single employer analysis, with the added element of intent to evade the employer's obligations under the labor laws. *Favia*, 995 F.2d at 788. Although all of the factors under the single employer analysis need not be met to support an alter ego finding, "unlawful motive or intent are critical inquiries in an alter ego analysis." *Id.* at 789 (quoting *Int'l Union of Operating Engineers v. Centor Contractors*, 831 F.2d 1309, 1312 (7th Cir. 1987)).

The Funds contend that Mr. Lanas's fraudulent intent can be inferred from the companies' failure to pay union obligations and Mr. Lanas's own personal bankruptcy in 2004 just before he incorporated Lanas 2. The Funds contend that this series of corporate "shams" allowed Mr. Lanas to operate a continuous concrete construction business while avoiding union obligations. Lanas 2 contends that the time gaps

between the existence of the companies demonstrate that Lanas 2 cannot be construed as a "disguised continuance" of either Lanas 1 or J. Lanas.

The Funds have no direct evidence of fraudulent intent; they rely on an inference from the companies' failures to meet obligations under the CBA. This evidence does not establish as a matter of law—as necessary for the Funds to obtain summary judgment—that Mr. Lanas abused the corporate form "for the purpose of depriving the union or the pension funds of any benefits to which they were entitled." *Favia*, 995 F.2d at 789. Because one reasonably could infer that the businesses' failures to pay their obligations were the result of financial difficulties, summary judgment is inappropriate.

### 3. Successor liability

Successor liability applies when there is substantial continuity in the operation of business and the successor had notice of the claim against the predecessor. *Laborers' Pension Fund v. Lay-Com, Inc.*, 455 F. Supp. 2d 773, 781 (N.D. Ill. 2006) (citing *Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund v. Tasemkin, Inc.*, 59 F.3d 48, 49 (7th Cir. 1995)).

The Funds contend that the same evidence that supports a finding of alter ego and single employer liability also supports successor liability. Specifically, the Funds contend that several similarities demonstrate a substantial continuity of business: (1) all three entities were concrete construction businesses, (2) each operated out of the Lanas residence, (3) each employed at least one union employee, (4) each business performed work for at least one common client, (5) each employed the same accountants and (6) each used the same type of equipment. Lanas 2 contends that the

significant time lapses between the operations of the companies make a finding of successor liability impossible.

Though this evidence certainly would support a finding that the businesses were similar, it does not establish that there is no genuine issue of fact on the matter of continuity. Specifically, the Funds have not demonstrated that Lanas 2 picked up where J. Lanas and Lanas 1 left off. *See id.* (finding successor liability where purchaser employed the same employees, used the same equipment, and continued working on contracts entered into by the predecessor). *See also Upholsters' Int'l Union Pension Fund v. Artistic Furniture of Pontiac*, 920 F.2d 1323, 1329 (7th Cir. 1990) (finding sufficient indicia of continuity where purchaser employed substantially all of seller's workforce and supervisors, manufactured seller's products, honored work orders not completed by seller, and honored seller's warranties). For example, the Funds have offered no evidence that Lanas 2 employed any of Lanas 1's or J. Lanas's employees—aside from Mr. Lanas—or that it performed contracts entered into by its predecessors. Summary judgment is, again, inappropriate.

**C.     Defaulted employer liability**

The Funds claim that Lanas 2 is liable for the unpaid contributions of Lanas 1 and J. Lanas under the Funds' "Defaulted Employer" policy. The Funds contend that both Lanas 1 and J. Lanas are defaulted employers and that Lanas 2 is a successor to their liabilities under the policy. Lanas 2 argues that it is not a party to the CBA and that the CBA is void. Furthermore, Lanas 2 contends that the notice it received was insufficient to trigger liability under the Defaulted Employer policy because it did not

13

advise Lanas 2 that it could contest the Funds' decision that it was a successor to a defaulted employer within thirty days, as required by the policy. Rather, the Funds' collection agent sent the notice on April 17, 2007 and demanded payment by April 30, 2007.

The Defaulted Employer policy provides that "upon notice as provided for in the policy, any Employer . . . shall be deemed a successor employer to the Defaulted Employer." Mot. at 13. As indicated earlier, the policy further provides that the notice "will provide the Employer with a date certain, *no less than 30 days after the date of transmittal* of the Notice to the Employer to provide evidence, satisfactory to the [Funds], that the Employer should not be subject to the [Defaulted Employer policy]." Pl. Ex. 7 at 3 (emphasis added).

The notice sent to Lanas 2 did not comply with the terms of the Defaulted Employer policy. The policy requires a period of thirty days for the entity to contest liability, but the notice given to Lanas 2 provided only thirteen days. Furthermore, the notice did not advise Lanas 2 that it could dispute the Funds' determination. Because the terms of the policy appear to require proper notice, a reasonable fact finder could conclude that Lanas 2 is not liable under the Defaulted Employer policy.

**Conclusion**

For the foregoing reasons, the Court grants plaintiffs' motion for summary judgment [docket no. 63] and denies it in part. The Court grants summary judgment in the plaintiffs' favor with respect to Lanas 2's own obligations under the CBA including

14

liquidated damages, and interest in the amount of $107,273.24[2] plus attorney's fees. The Court denies plaintiffs' motion with respect to its claim of liability for contributions owed by J. Lanas or Lanas 1. The Court sets the case for a status hearing on March 17, 2009 at 9:30 a.m. for the purpose of setting a trial date on that claim.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: March 4, 2009

---

[2]Lanas 2 owes a total of $68,254.71 for unpaid contributions, $5,370.82 for unpaid dues, $13,650.94 in liquidated damages for the unpaid contributions, $537.70 in liquidated damages for the unpaid dues, and $19,459.70 in interest. Lanas 2 has not contested these amounts.